May it please the Court, I'm Eric Alan Isaacson, Counsel for Objector-Appellant Sarah McDonald. I'd like to reserve five minutes for rebuttal, if I may, and I'm going to be sharing my argument with David Hawkes, who is Counsel for Objector-Appellant Bobby Sicchio. Mr. Hawkes is going to be addressing the District Court's lack of a sufficient analysis to allow this Court to review its exercise of discretion with respect to adequacy of settlement and with respect to the fee award, and also the absence of the reasoned response to all non-frivolous objections that is required by this Court's precedents. I'm going to be focusing on issues related to standing, to the Rule 23H requirement that the fee application and fee motion be available before the time for objections is run, and attorneys' fee and CAFA coupon issues. So that it doesn't get lost, I would like to begin with a point that's come up in several of the arguments already this morning, which goes to CAFA's requirement that attorneys' fees in a coupon settlement case be based on the value of coupons that are redeemed. It doesn't say will be redeemed or might be redeemed. It says that are redeemed. And I think there's been a feeling with some members of the panel that it can't mean what it says. Well, I don't know whether that's, I mean, if you're taking what my questions are to suggest that that's what it was. Nobody cited me that language before. Maybe you want to suggest to me then, if you want to start there, why is it that I can't determine that, just like I do in every other case, as to what is redeemed or what will be redeemed or what is or can be, why have I got to put that off until the end? Why can't I do it like I would any kind of damages case where the damages are, if you will, to come, but I've measured them as of today and I give them to somebody? Well, one of the problems is going to be difficulty of estimating or guesstimating what redemption rates are going to be. They vary. We have those same difficulties in every damage case. They vary widely. And I would not want to defend an expert reporting incident of Doe-Bear analysis on points like that. I think it makes more sense to construe the statute as written, and it's not a requirement that you delay the plaintiff's lawyers getting fees until some date long in the future. A company like Kohl's has very sophisticated accounting systems. They've got to account for coupons they give. They've got to account for gift cards and redemptions of coupons and gift cards. It's got to go in their SEC reports, for goodness sake. They know and will know when the gift cards are being used and being redeemed. But if they don't expire, and the fact that they don't expire is being argued as an important distinction that makes them not coupons, then you'll never know when it's done. They can be sitting in there in your drawer forever. If they sit in the drawer forever because people don't really value them, then the lawyers shouldn't get paid for that. Kohl's will know on a monthly basis or on a quarterly basis how many are being used. If they're really valuable and people run right out to the store and spend them right away, there will be millions of dollars in redemptions in the first month or the first quarter, and Kohl's can cut the check based on the redemptions. Well, some people don't pass checks that they receive in settlements of class actions. Some people don't. Okay. That doesn't mean they're not valuable. That means they can't get around to it. And they don't get around to it. They're not subject to a provision like CAFA that says the attorney's fees should be based on the value of the coupons that are redeemed. And it's not — I mean, it's not extremely unusual for lawyers to get paid over a period of time. I was a partner for 26 years at a couple of big class action firms, Milbert Weiss and then Lurant Coghlan, which is now Robbins Geller. Back in the days of Milbert Weiss, we had big tobacco class actions that settlement. The attorney's fees were set up in a way that they get paid over a period of 25 or 30 years. Every three months, I get a check for $6,000 until the time has run. If you're talking about companies like Kohl's with big coupon settlements or gift card settlements, it can be structured in a way that Kohl's knows how they are — how the attorneys' fees checks at that time. It honors the statutory tax. It gives class counsel an incentive to make sure that whatever in-kind relief they get is going to be valuable and will be used. So it creates the right incentives for CAFA as well. I'd like to point out that with respect to the timing of the class notice, Allen v. Bodola says that you need to have a re-notice of the entire class. When you're talking about notice under 23, you're concerned about the ability of a large number of class members to come in and respond. That's what protects people. Who do you represent? I represent Sarah McDonald. And so McDonald comes toward this — comes into this particular situation and gets additional time to brief the attorney fee issue, right? She was the one person who got additional time. I understand that. Nobody else said anything about it. Why have they not waived? I don't think it's true that nobody else said anything about it. Mr. Hawks? Well, what do we have — just a minute. What do we have in the record which would suggest that anybody else objected? Well, we've got Mr. Hawks' objection for Bobby Secchio, and you've got the fact that if class members don't know what the basis of the fee award is going to be, especially in a case where you've got a coupon settlement and it gets very complicated, then it doesn't make sense to say that they've waived it. They didn't get the notice that was necessary to make a meaningful objection. But it seems to me that you premise your prejudice argument entirely on the prejudice other members of the class who don't file objections have, either to the scheduling or to the attorney's fees. And I just kept reading about this, and I said, but McDonald has none of that. All your — your whole argument is to what those people who didn't say anything about it. Your Honor, the class is prejudiced if the notice doesn't go out, and any individual — Well, just a minute. The class is prejudiced, but if the class doesn't even care, they don't even give — let's suggest he's an exception. All of your arguments are about a class who did nothing, did not file objections, either to the scheduling or to the attorney's fees. And you filed the objection, and you got additional time. Well, additional time to file a 10-page brief, and Mr. Hawks didn't have notice of that. It was in the civil minutes, and nobody in the class knew that they had that opportunity besides my client. It's not fair to the class, and it's not fair to my client, because somebody like Mr. Hawks can come in and have all kinds of observations. And we're going — again, we're going on Mr. Hawks. Let Mr. Hawks talk about this. What prejudice do you have? You had it all. You had all the notice, and you had extra time. I'm prejudiced as in any other case where you've got a challenge to the adequacy of notice in that my client is a member of the class who — So your whole prejudice, again, is what other members of the class may have, not what your client had. My client — Is that the bottom line of your argument? Well, I guess — Yes or no? Is that the bottom line? I don't see any prejudice to McDonald at all. I think that Rule 23H will become a nullity, and that anybody who comes in and makes an objection will be deemed to have had notice. And if they're given some extra time, fine, nobody else can object. And Rule 23H and Mercury Interactive are effectively off the books. I understand what you've got to say. Any other arguments you want to — Can I ask you about your standing argument? I'm quite confused about why you're saying the plaintiffs don't have standing — don't have an injury to support standing, because that would seem to suggest neither does your client. And then it would seem to suggest there's no reason for you to be worried about this case. And I'm just quite confused about what you're getting at with that argument. I confess I clerked for Judge Wallace in the 1980s, and Judge Wallace said the first thing you've got to do is flag whether there's a standing issue. But if the plaintiffs don't have standing, then neither does McDonald, right? Well, if McDonald bought a product at a discount that was not worth what she paid for it, then, yes, she would have standing even under the Tobacco II case. But so do the — so do the plaintiffs, then. That's who the plaintiffs are. So why are you saying the plaintiffs don't have standing? Well, for one thing, the plaintiffs apparently aren't even — may not even be members of the class. With respect to Russell, the district court, when — Well, that's a different point. Let's assume they are members of the class. The class as defined has standing if your client does, right? The class as defined may have standing if — has standing, yes. I think — I mean, the allegations of the complaint are sufficient. There is not, however, evidence sufficient for Rule 23 stage class certification and settlement approval to find by preponderance of the evidence that those folks had standing. The Court found that Russell's claim does not fall within the class definition. That's at Supplemental Excerpt of Record 432. It goes on to say that Caffey's does, but it doesn't matter because they're only looking for an injunctive relief. It doesn't matter that she got a refund. Well, the class as defined is defined as people who did not get a refund. So it looks, looking at the record, like neither Caffey nor Russell is a member of the class, and you don't have Article III standing to represent a class you're not a member of. I am running into my colleague's time, Your Honor. I need to sit down. Good morning, and may it please the Court. David Hawkes on behalf of objector and appellant Bobby Ciccio. I'd like to address two basic but very, very important issues. First, the District Court erred when it completely ignored and otherwise failed to address my client's timely objection, which raised very serious concerns about this settlement. And second, the District Court also erred when it failed to engage in the requisite heightened scrutiny and analysis when evaluating and approving the settlement, the fee award, and also in certifying the settlement class. The District Court's failure to satisfy these procedural safeguards and protections, which are mandated by this Court, effectively precludes this Court from it. Go ahead. From engaging in any meaningful appellate review and also fails to protect the rights of absent class members who are giving up their rights as part of this. What's my standard of review as to the approving of the settlement? It's abuse of discretion. Clear abuse. What difference... What does clear abuse mean? I mean, usually, I just have abuse. Now, I have clear abuse. What's the difference? I'm not quite sure what the legal difference is, Your Honor, but... Well, then I'm a little worried about how you would attack this then. Because if I'm looking at a standard of review for a settlement and I'm saying, is this an abuse of discretion? That's one standard. If I'm looking at a clear abuse, one's got to make a higher showing. And my worry is that you haven't made the higher showing because the final order, there's no question, did not conduct an individualized analysis of various factors. However, the factors were addressed at various stages of the proceedings and at various hearings. And so I'm trying to figure out why, on a clear abuse of discretion, this wasn't sufficient to support the conclusion in the final order approving the settlement. Two things, Your Honor. One, when the order is not supported by sufficient findings... Just a minute, sufficient findings. All I'm trying to do is I gave you what you had. You said it wasn't individualized analysis. I understand that. But then I looked at all the other stages of the proceedings and what the court did in those stages. And those factors were addressed at those proceedings with respect to the earlier certification decisions and at various other hearings. And the analysis, then I said, why isn't that sufficient under clear abuse of discretion? But Your Honor, when the order is not supported by sufficient findings, it's not entitled to the same deference. And I think there's a difference between clear abuse of discretion when you comply with procedural safeguards of this court versus when you don't. Well, all I'm trying to get you to do is focus on the fact that when I'm looking for a clear abuse of discretion, I'm not going to just look at the final order. I'm going to look at all the things the district court did to get to the end result. And so therefore, I go to various stages of the proceedings. And I look at what the district court does there. And I'm trying to suggest whether they did it the way it ought to be done with the individualized analysis of the factors. And upon based on that, they did. How can that be a clear abuse of discretion? I would question whether the court actually did engage in a meaningful analysis of the Hamlin factors. And I don't believe that it's reflected. Well, I thought it was interesting. Because as I read what you briefed to me, it seemed to me that you didn't go to any other stages of the proceedings and look what happened. I did indeed, Your Honor. In fact, I look back at the class certification opinion where the court found that these plaintiffs were not members of the class they purport to represent and never revisited that. Well, and I need to look at that again. And I apologize if that's the case. OK. I understand your argument. I'd like to reserve. Can I ask a question about the in re mercury? So what would you have argued if you'd had the opportunity, if you'd had notice of the fees and the opportunity? Because it seems like you're saying we have this in re mercury error. But you haven't really said what you would have said if you'd had the right notice and the right opportunity. I think that the fees should have been based on the value of the gift cards. And that needs to be decreased. And there's certain precedent out there here in the Ninth Circuit that says that they're valued at 80% to 85% of the value. And then also valued based on how many of those gift cards are actually used as opposed to the total value. So if we disagree with that and we think that these are coupons, sorry, not coupons, so that we don't agree with you on that, then would there be any harm from the in re mercury error? I think there would be. Because I think that's a procedural safeguard that we don't want to let district courts know that they're free to disregard any time they don't think they need to comply. We don't want to set precedent where there are certain circumstances where district courts don't need to comply with the procedural safeguards announced by this court to protect absent class members and to allow this court to engage in meaningful appellate review. So what should happen to fix the in re mercury problem? I think that this court needs to send the case back to the district court. There needs to be another notice provided. And in fact, my client never received notice despite being a member of the Yes Loyalty Program. They had her physical address. They had her email address. And yet somehow she never received direct notice. She put this into an objection. Plaintiff's counsel never addressed it. And the court below never addressed it and never addressed anything in my client's objection. They completely ignored it. And again, that's another procedural safeguard the district court ignored. And so I think there's clear error by not satisfying the procedural safeguards designed to protect absent class members like my client. Thank you. Thank you. Did you have other questions? No, I didn't. Do you have other ones? Thank you. Thank you. Thank you. Good morning. May it please the court, Douglas Ciaffa for Plaintiffs Russell and Caffey. Excuse me. Had a lot of discussion today about coupons and CAFA. And so I'd like to address that first. But I really think the most important issue here from my perspective is the 23H issue. Because I believe that the record below adequately supports the court's determination that the settlement here was fair, adequate, and reasonable. As Your Honor mentioned, if we look at the entirety of the record and the proceedings below, there were motions to dismiss. There was a motion for certification. There was a motion for reconsideration and another ruling on the motion for reconsideration for certification in which the judge analyzed all the factors for certification. On the last point. Can I ask about CCO, though? Because I don't understand what happened here. Supposedly there's adequate notice, but CCO is saying I never got notice and no one even responds or evaluates it. What happened there? CCO was supposedly someone who shopped at Kohl's. And the notice in Kohl by the administrator, I mean, they sent out, they had email addresses, which they mailed out in postcards and publication notice. In fact, we had over- So why didn't you submit something to the district court saying, look, here's our administrator. They can show that they sent an email to CCO. I mean, I'd feel a lot better if there had been some response, but it seems like it was totally ignored. Am I right? I don't believe that I could have accessed that information within that short period of time for CCO personally. And I didn't. I did not. Our administrator submitted declarations of their notice efforts, and they detailed them. And we received over 357,000 claims from class members. We also referenced them to a website. So we did the best notice practicable under the circumstances. And CCO- What about CCO's arguments about the fees and how they seem unrealistic, the things over the holidays, it couldn't really have been spent? No response to that. So what happened there? Why weren't there responses to CCO's objections to how the fees were claimed? I'm confused by the court's question. Well, maybe because you didn't address it. So in CCO's brief to us and in the district court, CCO's making arguments about there couldn't really have been these fees spent on discovery. The billing shows time over Christmas. They couldn't really have worked then. I mean, maybe the answer is you really did work then, but you didn't respond. Of course we did. We responded with a supplemental declaration in support of the fee motion of the hours that we spent on the case. And it was before the court and he considered it. I work, unfortunately, almost every day of the year, and sometimes on Christmas. I don't know if I worked on Christmas on any particular year. My office is a mile from my house. But CCO has a whole brief about this to us, part of the brief, and I don't see a response about this. Perhaps I didn't think it was that crucial to the case, Your Honor, perhaps because I think that there's clear evidence in the record to support our fee request. First of all, the fee request was based on a percentage of the recovery, and it had a cross-check, a load-start cross-check. When we went to the hearing, there were, there had been objections filed, as you can see, from the docket that's part of the record. When we went to the, you know, on the timing, there was the attorney fee motion was filed August 15. The objection deadline was a week before. So a month after the attorney fee motion was filed, we had the hearing on September 12th. At the hearing, Counsel for McDonald was present and argued all the various objections. But does that satisfy the problem under Mercury that the rest of the class did not have notice of the motion? And that's a separate issue. And I would say that Mercury did not analyze harmless error in that case, and I think for a good reason, because the facts before Mercury were that the attorney fee motion was filed one week before the hearing, and there were no efforts to cure that problem. When I went to the hearing on September 12th, I requested to Judge Klausner that we continue the hearing for three weeks and we give the objectors an opportunity to submit supplemental briefing, which he did. I mean, they had two additional opportunities to file objections. But they, the members of the class have their own right to file objections. I understand. They haven't selected these objectors to represent them, and they haven't received notice in terms of the motion itself. They've got the original settlement agreement that gives parameters, and so maybe there's a harmless error analysis here, but the cases don't read that way. Well, I would say this. Under 23H1, that's the section that requires that the class be notified of the fee application, and that's what we did in the class notice. We told them that we were seeking 25% of the common fund as attorneys' fees and costs. So there's little dispute that that was complied with. The part that was a problem is the misscheduling of the attorney fee motion for one week later. Now, as soon as the, Your Honor, as soon as the court adopted a supplemental briefing schedule for the class. Well, I'm going to interrupt you for a minute because I don't understand why that's accurate. 23H says a claim for an award must be made by motion, and notice of the motion must be served on all parties, and for motions by class counsel directed to class members in a reasonable manner. How did that ever happen? When did that happen? The sections is that under one, it's notice of the motion must be served, which is what we did with the class notice. Under subsection two, it's the class member has an opportunity to object to the motion. I agree. And therefore, Mercury has interpreted that to mean, although some other circuits don't, that the class members are entitled to review the motion for some period of time prior to the hearing. Now, the objectors had that opportunity. Now, the question is, I guess, twofold. One, did the class, or was it sufficiently cured? And two, was it harmless? And I'd like to address both quickly. In terms of cure, which I think is maybe separate from harmless here, we attempted to, and as soon as the judge came out with his minute order. So I think, am I right that CCO claims not to even have gotten service of the pleadings of the things that were being filed in the district court, even though CCO was an objector? I'm not sure whether he received them or not. So I think that CCO is saying to us that that happened, and I didn't see a response from you about that either. I think I may have misspoken earlier when I said CCO made these attorney's visa objections in the district court, because I think they probably didn't, because they didn't have the opportunity, and they say they didn't get notice, but they're making them now, which I think maybe goes to the harmlessness question. Like, if they had gotten notice, maybe they would have made all of these arguments that exist on pages 25 to the end of their brief that you ignored here, and it gives us not much to go on to show why it's harmless, that those things shouldn't have been addressed in the district court. I would say this. If you look at the supplemental excerpt of record, page 655, on August 10, 2016, CCO filed an objection to the class settlement. It's in the record. So he must have had notice. I understand he says he didn't have notice, but he must have. He was subject to the- But is that before or after the fees application? It was five days before the fee application. Right, so how does he know what's in the fee application and whether it's reasonable? That's the H-2 problem, but I'm addressing first his contention that he never had notice, okay? But I think what he said is he didn't have notice of the fee application, even though he was an objector, or the things that happened after, like when McDonald got a chance to brief it, I think CCO is saying, I didn't have that chance. Well, I believe he did. I mean, all the class members were directed to, first of all, they know what the case is, the case number, PACER. They've been directed to the website by the notice. They're fully aware of what's going on in the case, and he filed an objection. Now, the issue is, I think all the people who filed objections in early August were aware of when the final hearing was. It's in their objections. They know the final hearing is on September 12th, and they know the website. They know they can go on to PACER because they filed things already, and if they checked, they bothered to check with PACER, they would have seen the court's minute order, which specifically told them that they could file supplemental briefs and objection to the attorney fee motion. They were provided an additional three weeks, okay? Also, in my supplemental attorney fee motion, I advised the court- You're saying everyone was given the additional three weeks? Because as I read the transcript, it was just McDonald who was given three weeks. Well, the court did say objector instead of objectors, but- Or anyone else in the class who wants to come along. Well, the court's wording is the court's wording. All I can say is you can read the minute order, and I uploaded all the relevant documents immediately onto the website. So the attorney fee motion was on the website, the court's minute order, and supplemental briefing was on the website. So I guess that that would be the- So I found the allegation that's in footnote six of their opening brief. They say the Russell plaintiffs did not serve objector CCO with the attorney's fees motion, and I didn't see any response about that in your brief. They make a lot of allegations that are troubling that were not responded to by you in your brief, and I don't know what we're supposed to do about whether you waived those responses. And so we assume that what they're saying is true. I mean, you're now telling us they're not true, but we're in a bit of a bad spot with this. Well, the motion is filed online, and it was filed five days after CCO filed his objection. So he can claim he didn't get served with it, but it's served online through ECF. Thank you. Further? You want to move to Judge Lynn's question? Which was? Well, I think he's- He's answered that. I think he's been responding to my question. My time is running out. If there's anything else, I would just say that going back to an issue about clear abuse of discretion, I think the record is sufficient to support the judge's approval of the settlement and is fair, adequate, and reasonable, especially if you look at what happened with the Chowning case that the court heard earlier today and the problems with restitution and proving damages. In this case, we have $6,150,000 as a common fund in the same exact case that Chowning tried to intervene into. I would leave with that. Thank you. Thank you. Good morning, Your Honors. James Speyer for Coles. Very quickly. Mr. Isason was talking about a standing issue. I don't think there is any standing issue under Spokio or any other case. He referenced an order of Judge Klausner's talking about how Russell may not even be a member of the class. After that order, in connection with the motion for preliminary approval, both plaintiffs, Caffey and Russell, submitted declarations detailing that they were in fact members of the class because they bought items within the class definition of a discount of 30% or more off and that they wouldn't have spent the money absent the alleged false advertising. So I think that's done. In terms of whether this is a gift card or a coupon, I think we satisfy the requirements for gift cards under NRAID-DVD. The only distinction that can be made is that the settlement does not offer cash in addition to the gift card. There's no requirement in CAFA that cash has to be offered if a gift card is offered. They actually could get cash for these gift cards, couldn't they? That's absolutely correct, Your Honor, under Civil Code section 1749.5. Under California law. That's correct. So I don't think there's any issue with the gift card. If the court decides not to approve the attorney's fees, I don't think that should upset the rest of the settlement. At supplemental excerpt of record 160 and 179, that's the settlement agreement. It makes clear that failure to approve attorney's fees, quote, shall not be a basis for rendering the entire agreement null or void. And there was a separate attorney's fees order that the court can deal with without disturbing the entire rest of the settlement. How would it work, though? Like, if we said that there needs to be new notice to deal with the NRAID-Mercury problem, could that be done without affecting the rest of the settlement? The only way... So, okay, so it gets sent back down. Let's say Judge Klausner says, okay, the attorney's fees are too high. In that instance... Or let's stick to the NRAID-Mercury problem. He says, the whole class was entitled to a chance to object to the attorney's fees motion, so you've got to send out that notice now. Say that. Okay, so notice is sent out. But that's going to cost something, right? So, like, where's that money going to come from? It's not going to come from Kohl's, Your Honor. So doesn't that mean the settlement gets affected? I'm just trying to figure out the logistics of how we could deal with the fees without dealing with the settlement, because the money, where's it going to come from? Well, if the plaintiff's lawyers want to collect their attorney's fees and it gets sent back down, and Judge Klausner says you have to redo the notice, they're going to have to figure out how to redo the notice. Out of the amount that would be entitled, the fees would come from. Out of the amount that we contractually agreed to. Yes, that's right. But won't any lessening in the attorney's fees end up going to the members of the class? That's absolutely correct, Judge Lynn. And so what that means is that if that happens, the final distribution of the gift cards, the final amount of the gift cards will, that determination will have to wait until after that process is gone through. So they are inextricably linked, unless you're going to issue one gift card and then another gift card. They're linked in that the gift card amount might increase if the attorney's fees are decreased, but the overall fairness and equity of the settlement should not be affected. Although we have a weird thing that could it become that they wouldn't then be eligible for cash? Because then it becomes more valuable than $10? If it becomes more valuable than $10, then I would argue that there's no requirement in CAFA or in In Re DVD that a gift card must be accompanied by cash. And what you'd be saying otherwise is that every settlement has to be at least partly a cash settlement. And I don't think that's what CAFA says and I don't think that's what In Re DVD says. All right. Thank you for your argument. Thank you. I'm not going to give everybody one more time. You went over, but I'll give the first unless you wanted to exchange between you. I'll give you a minute. Thank you very much, Your Honor. I appreciate it. Bobby Cecchio was pro se when she appeared below. So she was not getting anything by ECF. With respect to- But whose fault is that? I guess I'm not, I mean, she could have signed up for ECF anyway, maybe? Or how does it work? My understanding is that if you're not a member of the bar, they don't let you sign up for ECF filings. I don't know. I think it may vary from one district court to another. I don't know if that's the case in another district court. I think that's the case in the Southern District of New York. I can't tell you what it is in this district as I think about it. I think that it's very important to limit online DVD as a case where there was a cash option. If you don't limit it like that, you're gonna get all kinds of appeals like these quibbling over whether this is more like HP Inkjet or more like online DVD or more like this, balancing all these multiple factors. You know, the congressional intent was clear that if you're getting a voucher or something other than cash, it's a coupon. And online DVD ought to be limited to cases where as an online DVD, they could get $12 cash or if they'd rather, a $12 gift card that they could take to Walmart because that would be easier for some people. All right, thank you very much for your argument. This case is, there's four cases that are here submitted. And the last case, 1715863, Mellon v. Biltmore Loan and Jewelry has been submitted on the briefs. And this session is adjourned. Thank you.
judges: N.R. Smith, Friedland, Lynn